UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ETHAN D. SMITH and
JENNIFER L. DEES,

      Plaintiffs,

v.

MAE A. D'AGOSTINO, et al.,

      Defendants.

25-CV-1265-MAV
DECISION AND ORDER

---

## INTRODUCTION

The undersigned has been designated by the Second Circuit to preside over the above-captioned case filed in the Northern District of New York. ECF No. 10; 28 U.S.C. § 292(b).

On September 10, 2025, *pro se* Plaintiffs Ethan D. Smith and Jennifer L. Dees filed the instant lawsuit and motion for a temporary restraining order ("TRO") and preliminary injunction—their third federal case arising from alleged conduct in and related to domestic relations proceedings in state court largely between Plaintiff Smith and Defendant Veronica Smith, Plaintiff Smith's putative former spouse and mother of their three children. ECF No. 1; *see* N.D.N.Y. Case Nos. 25-CV-0199 (motions to dismiss complaint pending, requests for TROs and preliminary injunctions denied),[1] 24-CV-0001 (complaint dismissed without leave to amend after

---

[1] On September 18, 2025, Plaintiffs' 25-CV-0199 case in the Northern District of New York was reassigned to the undersigned as well. N.D.N.Y. Case No. 25-CV-0199, ECF No. 67.

Second Circuit dismissed Plaintiffs' appeal). Plaintiff Dees, Plaintiff Smith's partner and member of his household, is herself subject to a state court temporary order of protection and has been involved in state court proceedings regarding the Smith divorce and custody matters as Plaintiff Smith's "ADA advocate."[2] Plaintiffs paid the filing fee.

Their instant 98-page complaint begins:

> This action exposes a racketeering enterprise spanning more than five years, systematically orchestrating corruption, retaliation, and obstruction across state and federal courts. What began as judicial misconduct in a matrimonial proceeding has metastasized into a conspiracy involving judges, attorneys, court administrators, schools, and law enforcement, fortified by marital and professional ties that entrench conflicts of interest. At its core are unlawful attorney appointments and void judicial orders, enforced by a network of at least four married couples—state judges, bar administrators, OCFS, clerks, and attorneys—creating a closed system where fraud is legitimized, retaliation is routine, and justice is for sale in a pay-to-play scheme.

ECF No. 1 at 2. Like their two previously filed federal cases, Plaintiffs raise a multitude of federal and state law claims, including under 42 U.S.C. §§ 1983, 1985, and 1986, and the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961–1968, arising from allegedly conspiratorial and retaliatory conduct originating in state domestic relations proceedings that are ongoing. ECF No. 1. Plaintiffs' instant complaint identifies more than 100 named and unnamed individual persons or entities as Defendants, including two Second Circuit judges and the Hon. Mae A. D'Agostino, the N.D.N.Y. District Judge who presided over Plaintiffs' two

---

[2] Plaintiffs both allege to have a disability that require reasonable accommodation under Title II of the Americans with Disabilities Act and § 504 of the Rehabilitation Act. ECF No. 1 at 89–91.

previously filed federal cases. *Id.* In this action, Plaintiffs seek declaratory and injunctive relief, compensatory, statutory, and punitive damages, and "attorneys' fees, expert fees, and costs." *Id.* at 96–97.

Plaintiffs have also filed a motion for recusal of the undersigned, and demand that the Second Circuit's designation order be vacated and that their case "be certified to the Chief Justice of the United States [Supreme Court] for inter-circuit reassignment to a tribunal wholly unconnected to the defendants and the alleged misconduct." ECF No. 15 at 2.

For the following reasons, Plaintiffs' motion for the undersigned's recusal, ECF No. 15, is DENIED, and their motion for a TRO and a preliminary injunction, ECF No. 2, is DENIED, as is the relief sought in their September 19 supplemental filing, ECF No. 17. This Court does not have the authority to vacate an order of the Second Circuit or to certify a case to the United States Supreme Court for inter-circuit assignment. *See* 28 U.S.C. § 292(d) ("The Chief Justice of the United States may designate and assign temporarily a district judge of one circuit for service in another circuit, either in a district court or court of appeals, upon presentation of a certificate of necessity *by the chief judge or circuit justice of the circuit* wherein the need arises." (emphasis added)).

## DISCUSSION

I.   **Plaintiffs' Motion for Judicial Recusal**

Plaintiffs contend that the undersigned must be disqualified pursuant to 28 U.S.C. § 455(a) and (b)(3). ECF No. 15 at 2. Section 455(a) states that "[a]ny justice,

3

judge, or magistrate judge of the United States shall disqualify [her]self in any proceeding in which [her] impartiality might reasonably be questioned," and section (b)(3) states that judicial disqualification is required "[w]here [the judge] has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy." 28 U.S.C. § 455(a), (b)(3).

There are no grounds for the undersigned's disqualification. By the statute's plain language, § 455(b)(3) is inapplicable, and Plaintiffs do not attempt to allege facts suggesting otherwise. Plaintiffs ground their demand for disqualification in their allegations that (1) the undersigned previously served as a judge within the New York Unified Court System, thereby being "subject to the administrative oversight" of certain state court judges who are named in Plaintiffs' complaint, (2) that the undersigned was appointed to and served on the New York State Advisory Committee on Judicial Ethics with named Defendants, (3) that the undersigned is active in the Asian American Judges Association of New York, "which publicly celebrated" the election of a Defendant judge, and (4) that while serving as a Monroe County Court Judge, the undersigned presided over a wholly unrelated criminal matter, in which a Defendant purportedly served as defense counsel. ECF No. 15 at 6–8. There is no basis for disqualification under 28 U.S.C. § 455, and Plaintiffs' motion for recusal, ECF No. 15, is DENIED.

## II. Plaintiffs' Motion for a TRO and Preliminary Injunction

In the Second Circuit, the same legal standard governs the issuance of preliminary injunctions and TROs. *Loc. 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992); *Bragg v. Jordan*, 669 F. Supp. 3d 257, 266 (S.D.N.Y. 2023), *appeal dismissed sub nom. Bragg v. Pomerantz*, No. 23-615, 2023 WL 4612976 (2d Cir. Apr. 24, 2023). A party seeking a TRO and/or a preliminary injunction must show "(1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a [TRO and/or preliminary injunction] is in the public interest." *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018).

The Court construes *pro se* pleadings liberally and interprets them to raise the strongest arguments that they suggest. *Barnes v. City of New York*, 68 F.4th 123, 127 (2d Cir. 2023). Nonetheless, "*pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006); *accord McKenzie-Morris v. V.P. Recs. Retail Outlet, Inc.*, No. 22 Civ. 1138, 2023 WL 5211054, at *5 (S.D.N.Y. Aug. 13, 2023).

Here, Plaintiffs' motion for a TRO and a preliminary injunction must be denied. Plaintiffs' motion seeks the following:

1. Enjoin Enforcement of Void Orders – Temporarily restrain and preliminarily enjoin Defendants from enforcing or acting upon any void state-court orders, including Judge Wait's September 4, 2025, protection orders, JHO Doern's August 27, 2025, report and any derivative orders or fraudulent 18-D/AFC appointments.

5

2. Restore Custody and Prevent Interference – Reinstate the status quo ante 50/50 custody arrangements and prohibit any further abductions, removals, or custodial interference by Defendants, including school and law enforcement officials.

3. Protect Child Safety – Bar Defendants from placing the children in unsafe housing at 72 Southern or authorizing non-emergency medical procedures without joint consent of both Plaintiffs.

4. Restrict Retaliation and Interference – Enjoin retaliation against Plaintiffs as federal witnesses, including gag orders, false filings, manipulation of police or school officials, or witness tampering.

5. Preserve Evidence – Direct Defendants to preserve and not destroy bodycam footage, reports, school records, code-enforcement files, medical records, and related evidence.

ECF No. 2 at 1–2 (Plaintiffs also seeking "such other and further relief, including declaratory relief and waiver of bond, as the Court deems just and proper."). On September 19, 2025, Plaintiffs filed a "Supplemental Notice of Continuing State Court Misconduct and Retaliation" related to a September 17 proceeding held in Saratoga County Family Court, ECF No. 17, which this Court has considered with Plaintiffs' other filings.

### A. Requested Relief in Paragraphs 1–4

The *Rooker-Feldman* doctrine and *Younger* Abstention preclude this Court from granting the relief Plaintiffs seek in paragraphs 1–4 above. Both doctrines have been implicated and discussed on multiple occasions in Plaintiffs' two previously filed federal lawsuits. *See, e.g.*, N.D.N.Y. Case No. 25-CV-0199, ECF Nos. 12, 31, 61, 66; N.D.N.Y. Case No. 24-CV-0001, ECF Nos. 12, 14, 19, 21. The Court addresses these principles again now.

6

The *Rooker-Feldman* doctrine applies when "the requested federal court remedy of an alleged injury caused by a state court judgment would require overturning or modifying that state court judgment." *McNamara v. Kaye*, No. 08–4561–cv, 2009 WL 3377914, at *1 (2d Cir. Oct. 20, 2009) (summary order). The doctrine also bars a district court from considering claims that are "'inextricably intertwined'" with a prior state court determination." *Fernandez v. Turetsky*, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014) (quoting *Johnson v. Smithsonian Inst.*, 189 F.3d, 180, 185 (2d Cir. 1999)).

For reasons discussed in more detail below, the *Rooker-Feldman* doctrine clearly precludes granting the relief sought by Plaintiffs in paragraphs 1–4 of their motion. *See, e.g., Allen v. Mattingly*, No. 10 CV 0667, 2011 WL 1261103, *8 (E.D.N.Y. Mar. 29, 2011) (holding there was no jurisdiction under *Rooker–Feldman* where plaintiff's "claims invite this Court to review and reject the state Family Court's determinations to remove her son from her custody and to place him in the custody of a foster care agency, which have not otherwise been vacated, i.e., her son has not been returned to her custody").

The *Younger* abstention doctrine cautions against enjoining or otherwise interfering in ongoing state proceedings. *See Sprint Comms., Inc. v. Jacobs*, 571 U.S 69, 77–78 (2013); *Trump v. Vance*, 941 F.3d 631, 637 (2d Cir. 2019), *aff'd and remanded*, 591 U.S. 786 (2020); *see also Younger v. Harris*, 401 U.S. 37 (1971). *Younger* abstention is appropriate in three categories of state court proceedings: (1) state criminal prosecutions; (2) civil enforcement proceedings that are "akin to

7

criminal prosecutions" and (3) civil proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint*, 571 U.S. at 72–73; *accord Ajaero v. Obama*, No. 23-CV-8096 (LTS), 2023 WL 7386583, at *5 (S.D.N.Y. Nov. 7, 2023). "*Younger* abstention is grounded partly on traditional principles of equity, but primarily on the even more vital consideration of comity," reflecting a "proper respect for state functions, a recognition of the . . . separate state governments, and a . . . belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Trump*, 941 F.3d at 637.

Federal courts regularly hold that ongoing state-court custody and domestic relations matters, such as those at issue here, warrant *Younger* abstention. *See, e.g., Curcio v. Grossman*, No. 22 CV 1648 (VB), 2022 WL 767167, at *7 (S.D.N.Y. Mar. 14, 2022) ("to the extent that Plaintiff asks this Court to intervene in [her pending state-court child-custody] . . . proceeding, the Court also dismisses those claims under the *Younger* abstention doctrine"); *Walker v. Family Ct. Judge Catherine Cholakis*, No. 1:19-CV-1288 (LEK/CFH), 2020 WL 3503158, at *4 (N.D.N.Y. June 29, 2020) (where the plaintiff challenged a temporary order in an ongoing child custody dispute, alleging that the temporary custody order was gained under "lies and false pretenses and therefore should be considered invalid," finding application of *Younger* abstention barred the plaintiff's federal claims for injunctive relief); *Herbert v. Cattaraugus Cnty.*, No. 17-CV-248S, 2017 WL 5300009, at *4 (W.D.N.Y. Nov. 13, 2017) (applying *Younger* abstention to the plaintiff's claims

8

arising from ongoing Family Court proceedings, and noting that "[s]everal courts in this Circuit have held that *Younger* abstention applies in similar circumstances"); *Robinson v. Admin. Child. Servs.*, No. 23-CV-2058(EK)(TAM), 2025 WL 917198, at *5 (E.D.N.Y. Mar. 25, 2025) ("Because child custody proceedings are a category of proceedings where *Younger*-abstention is appropriate, the Court should abstain."); *Stumpf v. Maywalt*, 605 F. Supp. 3d 511, 517 (W.D.N.Y. 2022).

Plaintiffs' requested relief in paragraphs 1–4 above plainly seek to undo state court decisions and/or interfere with ongoing state court matters pertaining to child custody and temporary orders of protection. There is no other way to interpret Plaintiffs' requests.

For example, Defendant Judicial Hearing Officer ("JHO") James Doern's August 27, 2025 report recommended to Judge Vincent Versaci (a Defendant in this action and New York State Acting Supreme Court Justice), that, *inter alia*, "it would be in the best interest of the children that Ms. Veronica Smith [a Defendant in this action and the mother of Plaintiff Smith's children] have sole legal and physical custody. Furthermore, as sole legal custodian, it is recommended that Ms. Veronica Smith be awarded exclusive decision-making authority," and that "Mr. Smith's parenting time should be suspended" with the now two minor children. ECF No. 2-2 at 191. As of the date of this Decision and Order, Judge Versaci does not appear to have issued a final order on these custody issues—clearly implicating *Younger* abstention.

According to exhibits Plaintiffs submitted, Defendant Veronica Smith sought additional relief in state court the following week because she reported escalating concerns regarding Plaintiffs' behavior and Judge Versaci had not yet issued a final custody modification order addressing JHO Doern's report and recommendation. *E.g.* ECF No. 2-2 at 339–51, 361–80. On September 2, 2025, Defendant Smith, through counsel (also named as a Defendant in this federal action) filed a letter motion seeking to have Judge Versaci immediately suspend Plaintiff Smith's parenting time until further order of the court in light of JHO Doern's report and recommendation and Plaintiff Smith's and Plaintiff Dees' recent conduct and social media activities, including that Plaintiff Smith allegedly "liked" a comment on Facebook that stated he should "just take the child and leave the country . . . ." *Id.* at 337. The next day, Defendant Smith, through counsel, filed family offense petitions with the Saratoga County Family Court seeking emergency temporary orders of protection against both Plaintiffs. *Id.* at 339–51. These petitions were heard on September 4, by Judge Jeffrey D. Wait (another Defendant in this action and Saratoga Springs City Court Judge and Acting County Court Judge) who issued orders of protection against both Plaintiff Smith and Plaintiff Dees, terms of which included suspending Plaintiff Smith's parenting time with the two minor children, subject to modification by the state Supreme or County Courts. ECF No. 2-2 at 13–17. Plaintiffs' specific requests to enjoin and modify these orders clearly implicate the *Rooker-Feldman* doctrine and/or *Younger* abstention.

Whether Plaintiff Smith should have "50/50 custody" and/or joint decision-making authority, whether his parenting time will continue to be suspended as temporarily ordered by Judge Wait, etc. are issues that are central to litigation occurring in the state Supreme and County Courts of Saratoga County. The same holds true for whether unspecified Defendants in this federal action may "authoriz[e] non-emergency medical procedures without joint consent of both Plaintiffs"[3] or whether the minor children should be prohibited from residing at a certain address. Whether future acts may reasonably be characterized as "abductions, removals, or custodial interference" is necessarily dependent on "undoing" the existing temporary order of protection suspending Plaintiff Smith's parenting time, and/or interfering with custody decisions pending in state court—principally, Judge Versaci's review and final custody modification order on JHO Doern's report and recommendation. Similarly, characterizations of "gag orders," "false filings," "manipulation of police or school officials," "witness tampering," and retaliation "against Plaintiffs as federal witnesses" are transparent attempts to repackage attempted federal enjoinment of state court findings and conclusions.[4]

---

[3] The Court notes that it is unclear whether Plaintiffs intended to suggest that Plaintiff Dees is entitled to share in decision-making authority with respect to the minor children of Plaintiff Smith and Defendant Veronica Smith or whether Plaintiffs intended the language, "both Plaintiffs," to read, "both parents." Plaintiffs have made no allegations that plausibly show Plaintiff Dees has any parental rights with respect to the Smith children.

[4] To the extent that Plaintiffs may be alleging in their complaint that they are entitled to damages as a result of these alleged violations of, for example, their First Amendment rights, such arguments will be addressed in due course.

11

In sum, pursuant to the *Rooker-Feldman* doctrine and *Younger* abstention, this Court is without jurisdiction to modify, vacate, stay, or otherwise interfere in the state court custody and family offense decisions and proceedings implicated by Plaintiffs' motion for a TRO and preliminary injunction.

Plaintiffs argue that neither *Rooker-Feldman* doctrine nor *Younger* abstention apply because (1) "Plaintiffs are not seeking federal appellate review of a valid state-court judgment. Instead, they challenge void, non-final, fraud-driven acts issued in the clear absence of jurisdiction," and (2) "federal courts may not abstain where state proceedings are undertaken in bad faith, for purposes of harassment, or where irreparable harm is both great and immediate . . . [or] when children's safety is at stake." ECF No. 2-1 at 9–10. These arguments are unavailing.

Despite Plaintiffs' voluminous submissions, they fail to make coherent arguments as to why the Saratoga County Supreme and Family Courts allegedly lack jurisdiction. Most of Plaintiffs' "jurisdictional" challenges are conclusory and devoid of any factual substance. For example, in their "Notice of Nullity" filed in the New York State Supreme Court, Plaintiffs simply assert that "[j]urisdiction in this case terminated on August 3, 2020: On that date, any lawful authority to preside over Index No. 2020-1227 ceased," and that "Justice Versaci has been without lawful authority to preside over Index No. 2020-1227 since the moment he stepped onto the case in January 2024." ECF No. 2-2 at 4–5. Because, Plaintiffs argue, Judge Versaci never had "jurisdiction," his referral of certain motions to JHO Doern was "void" and

12

thus JHO Doern, who issued the report and recommendation challenged here, also lacks jurisdiction. *Id.* at 2–3.

From what the Court is able to glean, Plaintiffs seem to principally argue that because the state court unlawfully appointed attorneys for the children and for Defendant Smith, the courts lack "jurisdiction." *E.g.*, ECF No. 1 at ¶ 164 ("Every judicial defendant named herein was on notice of the enterprise's unlawful structure and lack of jurisdiction by no later than 2022, when Plaintiffs filed multiple Article 78 proceedings challenging void attorney appointments, missing indigency affidavits, and systemic fraud in Saratoga Supreme/Family Court."); ¶ 178 (stating that "proceedings were jurisdictionally void *ab initio*" because Plaintiffs had submitted "more than thirty" documents showing "missing indigency affidavits, absent USC-882 authorizations, and fraudulent attorney appointments"). Plaintiffs' limited legal citations that purportedly support these arguments are either inaccurate or point the Court to cases that do not discuss attorney appointments at all. The Court finds that issues pertaining to which attorneys may practice in front of a state court are the type that the state has an interest in addressing without interference from federal district courts in the form of injunctive relief. *See Trump*, 941 F.3d at 637.[5]

Plaintiffs also allege, in conclusory fashion, that Family Court judges have "alter[ed] custody determinations reserved exclusively to [the] Supreme Court"— seemingly attempting to undermine the validity of Judge Wait's September 4

---

[5] To the extent that Plaintiffs may be alleging in their complaint that they are entitled to damages as a result of these alleged unlawful attorney appointments, such arguments will be addressed in due course.

13

temporary orders of protection against Plaintiffs. ECF No. 1 at ¶ 157; *see, e.g.,* ECF No. 2-1 at ¶ 5. Contrary to Plaintiffs' seeming position, there is no inherent conflict between the Supreme Court having jurisdiction to issue final custody modification orders and the Family Court addressing emergency circumstances that it finds warrant "temporary" relief such as that ordered by Judge Wait on September 4. *See, e.g., Barrett LL. v. Melissa MM.,* 224 A.D.3d 942 (3d Dep't 2024) (discussing simultaneous custody modification proceedings and temporary orders of protection issued on family offense petitions); *Norwood v. Capone,* 15 A.D.3d 790 (3d Dep't 2005) (same); ECF No. 2-2 at 13–17 ("temporary" orders of protection, "subject to" modification by the Supreme and County Court), 361–80 (transcript of the September 4 *ex parte* family offense hearing, reinforcing the separate function of a temporary order of protection). To the extent that Plaintiff Smith seeks to challenge the Family Court's authority to temporarily suspend his parenting time, his remedy would be in state court, not federal district court. *E.g., Ritchie v. Ritchie,* 184 A.D.3d 1113, 1114 (4th Dep't 2020) ("After a temporary order of protection was entered *ex parte*, the father filed a motion by order to show cause seeking, *inter alia,* removal of the matter to Supreme Court, vacatur of the temporary order of protection, modification of the parties' custody and visitation arrangement by awarding the father sole custody of the children with the 'suspen[sion]' of the mother's 'visitation,' and an award of attorney's fees. The matter was removed to the Supreme Court, which conducted a fact-finding hearing on the mother's family offense petition.").

14

### B. Requested Relief in Paragraph 5

Plaintiffs also seek an order from a federal court to "[p]reserve [e]vidence" by directing unspecified Defendants "to preserve and not destroy bodycam footage, reports, school records, code-enforcement files, medical records, and related evidence." ECF No. 2 at 2. The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation. *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001) (federal standard); *see Thornhill v. A.B. Volvo*, 304 A.D.2d 651 (2d Dep't 2003) (under New York law, a party is responsible for preserving evidence when they are on notice that it may be needed for litigation). Plaintiffs have not established why such existing obligations are insufficient here or that there is any imminent risk that certain evidence may be destroyed to warrant their requested injunctive relief.

\* \* \*

In sum, Plaintiffs' motion for a TRO and preliminary injunction, ECF No. 2, is denied in its entirety, and their supplemental requests for a "short protective order maintaining the status quo by prohibiting the issuance or enforcement of arrest warrants, substitute service orders, or further interference with Plaintiff Smith's custodial rights pending federal review" and an expedited hearing, *see* ECF No. 17 at 5, are denied as well.

### III.  Plaintiffs' Inquiry Re. Public Access

On September 17, Plaintiffs requested clarification on why their "complaint and exhibits have been placed in restricted status such that the public cannot download them." ECF No. 16 at 1. The Northern District of New York's Local Rules of Civil Procedure and the Federal Rules of Civil Procedure require that the names of minor children and dates of birth be appropriately redacted from all filings. *See* N.D.N.Y. Loc. R. Civ. P. 5.2(a); Fed. R. Civ. P. 5.2(a). Given the volume of Plaintiffs' filings, the N.D.N.Y. Clerk's Office limited access thereof to court users, case participants, and to public terminals on a preliminary basis to ensure that the privacy protections implicated by the Local and Federal Rules were complied with.

Having since reviewed Plaintiffs' full submissions, and acknowledging that Plaintiff Smith's oldest child is no longer a minor, the Court finds that restricting public access to public terminals is no longer needed for Plaintiffs' existing filings.

### IV: Notice to Plaintiffs

As discussed, this is Plaintiffs' third federal lawsuit arising from an alleged conspiratorial and retaliatory scheme that now appears to involve virtually every individual and entity purportedly connected to the underlying state court matrimonial, custodial, and family offense proceedings. The record Plaintiffs have submitted here demonstrate their repeated attempts to halt state court proceedings on the grounds that they have simply filed actions in federal court, and they continue to add new judicial officers as federal defendants and proceed to seek judicial recusal

of each such officer, including on several occasions within the last week alone. *See* ECF Nos. 15, 17.

Plaintiffs' first federal case, raising very similar claims and allegations to this case as well as to Plaintiffs' second federal action which is now pending before the undersigned, was dismissed without leave to amend after the Second Circuit dismissed Plaintiffs' appeal. N.D.N.Y. Case No. 24-CV-0001, ECF Nos. 19, 21. Plaintiffs have since filed two subsequent and closely related federal actions. This is also at least the fourth time that Plaintiffs have sought and been denied similar injunctive relief in federal court. *See* N.D.N.Y. Case No. 25-CV-0199, ECF Nos. 12, 31, 61, 66. After the third such attempt, the Northern District of New York stated on July 1, 2025, that "[t]he Court will not consider any additional motions from Plaintiffs until a decision on the pending motions to dismiss is rendered. Plaintiffs are directed to cease their filings of repetitious applications and motions." *Id.*, ECF No. 61 at 2. Two months later, Plaintiffs filed their third federal action and another motion for immediate injunctive relief.

Plaintiffs' complaint in this case and their case under N.D.N.Y. docket number 25-CV-0199 will be addressed by this Court in due course. In the meantime, however, Plaintiffs are on notice that "United States Courts are not powerless to protect the public, including litigants . . . from the depredations of those . . . who abuse the process of the Courts to harass and annoy others with meritless, frivolous, vexatious or repetitive . . . proceedings. *In Re Hartford Textile Corp.*, 659 F.2d 299, 305 (2d Cir.

17

1981), *cert. denied,* 455 U.S. 1018 (1982). Plaintiffs shall refrain from filing repetitious and conclusory submissions.

## ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiffs' Motion for Recusal, Vacatur of Second Circuit Designation, and Reassignment to a Neutral Circuit, ECF No. 15, is DENIED with respect to the undersigned's recusal and is otherwise DISMISSED because this Court is without authority to provide the additional relief sought therein; and it is further

ORDERED that Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction, ECF No. 2, is DENIED; and it is further

ORDERED that the relief sought in Plaintiffs' Supplemental Notice of Continuing State Court Misconduct and Retaliation, ECF No. 17, is DENIED; and it is further

ORDERED that the N.D.N.Y. Clerk's Office shall promptly remove access restrictions on Plaintiffs' existing filings, ECF Nos. 1–2, in the above-captioned case, resolving Plaintiffs' ECF No. 16 letter motion.

SO ORDERED.

Dated: September 22, 2025
      Rochester, New York

 

_____
HON. MEREDITH A. VACCA
UNITED STATES DISTRICT JUDGE
*(sitting by designation in the N.D.N.Y.)*

18