UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ETHAN D. SMITH, and
JENNIFER L. DEES,

|  |  |  |
|---|---|---|
| | **Plaintiffs,** | **ORDER** |
| -vs- | | |
| MAE D'AGOSTINO, *et al.*, | | 25-CV-1265-MAV-CDH |
| | **Defendants.** | |

---

Plaintiffs Ethan D. Smith and Jennifer L. Dees initiated this action pro se on September 10, 2025 and paid the filing fee. ECF No. 1. Their complaint names over one hundred Defendants, including two Second Circuit Judges; the Clerk of Court for the Second Circuit; a federal District Judge; several state court judges; the New York State Attorney General and two of her assistant attorneys; five municipalities and select employees; a school district and a regional educational service agency; a number of private attorneys, law enforcement officers, Child Protective Services and Office of Children and Family Services employees, local businesses, and individuals; and twenty Jane and John Doe defendants. *Id.* ¶¶ 3–115. Among other claims, the complaint alleges a vast RICO conspiracy to enrich enterprise members, obstruct justice, retaliate against Plaintiffs, and deprive Plaintiffs of their constitutional rights to due process, equal protection, free speech, and familial association. *Id.* ¶ 469.

For the reasons discussed below, Plaintiff's complaint is dismissed *sua sponte* with leave to amend within 30 days from the date of this order.

## BACKGROUND

### I. Procedural History

1

The procedural history of this action is set forth in greater detail in the Court's prior order denying Plaintiff's motion for judicial recusal and a temporary restraining order and preliminary injunction. ECF No. 19. For the purposes of the present decision, it is sufficient to note that Plaintiffs commenced this action proceeding *pro se* and paid the filing fee in the Northern District of New York on September 10, 2025. ECF No. 1. Though not identical, the complaint involves similar claims and shares several defendants in common with two other actions filed in the Northern District in the past two years. *See Dees and Smith v. Zurlo, et al.*, Case No. 24-CV-0001 (N.D.N.Y.), ECF No. 14 at 3 (noting the complaint was against "a broad spectrum of governmental entities and private defendants including judges, attorneys, family members, the Saratoga County Sheriff's Office, district attorneys' offices, departments of social service, Warren County, Saratoga County, and the City of Mechanicville"); *Smith et al v. Fisher et al.*, Case No. 25-CV-0199 (N.D.N.Y.), ECF No. 12 ("Plaintiffs' claims relate to past and ongoing state court matters and the named Defendants are two state court judges, the Chief Clerk of the Third Department, and three lawyers who were assigned to represent Plaintiffs or their children in the underlying state court proceedings."). Notably, the first action cited above, *Dees and Smith v. Zurlo, et al.*, was dismissed without leave to amend after the Second Circuit dismissed Plaintiff's appeal. Case No. 24-CV-0001 (N.D.N.Y.), ECF Nos. 19, 21.

On September 16, 2025, the Second Circuit designated this Court to perform the duties of United States District Judge temporarily for the Northern District of

New York for this specific case. ECF No. 10.

## II. Factual Allegations

The factual allegations regarding a handful of the Defendants in the instant case give a flavor for the entirety of the complaint, which alleges a conspiracy that involves "at its core . . . unlawful attorney appointments and void judicial orders, enforced by a network of at least four married couples – state judges, bar administrators, OCFs, clerks, and attorneys – creating a closed system where fraud is legitimized, retaliation is routine, and justice is for sale in a pay-to-play scheme." ECF No. 1 at p. 2.

According to the complaint, Plaintiff Smith's ex-wife, Defendant Veronica Smith, initiated divorce proceedings against him in June 2020. ECF No. 1 ¶ 128. On August 3, 2020, Judge Paul Pelagalli, the "engineer of the racketeering scheme," initiated "the racketeering enterprise" when he appointed an attorney for the child. *Id.* ¶ 116. Plaintiffs claim that Judge Pelagalli's adjudication of the matrimonial proceedings "was not neutral adjudication but a calculated mechanism to preserve revenue for the system while protecting an abuser." *Id.* ¶ 120. For this and other actions between his appointment of the attorney for the child in 2020 and his assumption of the role of Clifton Park Town Attorney in January 2024, Plaintiffs allege Judge Pelagalli's conduct constituted mail and wire fraud, honest services fraud, extortion under color of law, obstruction of justice, retaliation against witnesses, and deprivation of rights under color of law. *Id.* ¶ 125.

Plaintiff alleges that "[t]he enterprise operated through Saratoga Family and

Supreme Court, Saratoga Springs City Court, county clerk offices, the AD3 [Appellate Division, Third Department], and into federal forums." *Id.* ¶ 161. Plaintiff claims that defendant judges and various other judicial employees in these courts and offices acted in concert to commit, attempt, and/or aid and abet multiple predicate racketeering acts, including wire fraud, obstruction of justice, witness tampering/retaliation, deprivation of rights under color of law, and RICO conspiracy. *Id.* ¶ 162.

For instance, Plaintiff alleges that from August 2023 through August 2025, the Third Department of the Appellate Division of the New York State Supreme Court "acted not as a neutral appellate forum but as an enforcement arm of the enterprise. Despite receiving no fewer than 10 emergency motions . . . . [the Appellate Division] issued only boilerplate summary denials, without oral argument, hearings, or written findings." *Id.* ¶ 225. Plaintiffs allege the Appellate Division's conduct "constitutes predicate racketeering acts" including wire fraud, obstruction of justice, retaliation against witnesses, deprivation of rights under color of law, and conspiracy to conduct racketeering. *Id.* ¶ 233.

Plaintiffs allege that Second Circuit Judges William Nardini and Joseph Bianco, and Second Circuit Clerk of Court Catherine O'Hagan Wolfe, "used the Second Circuit as an instrument of the enterprise, obstructing appellate review and laundering unlawful dismissals into precedential federal records." *Id.* ¶ 265. The Second Circuit's multiple rulings in Plaintiffs' cases "were not neutral adjudications, but retaliatory acts designed to protect conflicted state and federal defendants,

prevent review of fraudulent attorney appointments, and foreclose federal remedies for Plaintiffs." *Id.* ¶ 271. This conduct constituted the predicate racketeering acts of wire fraud, obstruction of justice, witness retaliation, deprivation of rights under color of law, and RICO conspiracy. *Id.* ¶ 273.

Plaintiffs allege that ten named law enforcement defendants "engaged in a deliberate, continuous pattern of racketeering activity and retaliation against Plaintiffs as federal witnesses." *Id.* ¶ 281. Plaintiffs state that in the face of repeated notice that Plaintiffs were subject to void judicial proceedings and "escalated threats," these defendants "refused enforcement and instead weaponized their offices to protect enterprise actors." *Id.* Their conduct allegedly constituted obstruction of justice, witness tampering/retaliation, conspiracy against rights, deprivation of rights under color of law, mail and wire fraud, honest services fraud, and RICO conspiracy. *Id.* ¶ 285.

Plaintiffs allege that Defendant Letitia James, Attorney General of the State of New York, two of her assistant attorneys general, and several local district attorneys were "direct architects and enforcers of the racketeering enterprise, weaponizing prosecutorial discretion as a retaliatory shield for unlawful conduct." *Id.* ¶ 313. Defendant James, in particular, refused to prosecute or intervene despite Plaintiffs' provision of notice of multiple ethical and legal violations, and "instead direct[ed] her deputies to defend void orders . . . . act[ing] not as chief law enforcement officer of the state but as chief protector of the enterprise." *Id.* ¶ 319. Plaintiff claims these defendants engaged in the predicate racketeering acts including obstruction of

justice, witness tampering and retaliation, conspiracy against rights, deprivation of rights under the color of law, mail and wire fraud, honest services fraud, fraud upon the court, and racketeering conspiracy. *Id.* ¶ 315.

Plaintiffs further claim that several Defendants from the New York State Office of Child and Family Services, as well as from Child Protective Services "falsified records, prematurely closed founded cases, fabricated excuses to avoid intervention, and obstructed compliance with subpoenas." *Id.* ¶ 349. "These coordinated acts were not discretionary errors. They were deliberate enterprise tactics." *Id.* ¶ 361. Plaintiffs allege that this conduct constituted obstruction of justice, witness tampering and retaliation, conspiracy against rights, deprivation of rights under color of law, falsification of public records, mail and wire fraud, and racketeering conspiracy. *Id.*

## DISCUSSION

"District Courts do not generally conduct *sua sponte* reviews of actions in which the plaintiff has paid the filing fee." *Yoo v. Rochester Gen. Hosp.*, No. 18-CV-6398 CJS, 2018 WL 3575660, at *2 (W.D.N.Y. July 25, 2018). Further, pro se submissions are reviewed with "special solicitude," and "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) (internal quotation marks and emphasis omitted). Nevertheless, "pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law." *Id.* at 477. In that regard, the Second Circuit has confirmed that a "district court has inherent authority to 'dismiss

a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee.'" *Hariprasad v. New York*, 722 F. App'x 102, 102 (2d Cir. 2018) (quoting *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000)).

"[A] complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Thus, the "term 'frivolous,' when applied to a complaint, embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Id.* A finding of frivolousness is therefore appropriate "'when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them.'" *Selby v. United States*, No. 24-CV-8761 (LDH) (LB), 2025 WL 552609, at *2 (E.D.N.Y. Feb. 19, 2025) (quoting *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)).

After reviewing all 545 paragraphs of Plaintiffs' complaint, the Court finds both that the facts alleged rise to the level of the irrational or the wholly incredible, and that the complaint lacks an arguable basis in law.

## I. Frivolous Factual Allegations

"A claim is frivolous when it is vague and incomprehensible, or when it is supported by baseless factual allegations 'describing fantastic or delusional scenarios.'" *Morpurgo v. Inc. Vill. of Sag Harbor*, 697 F. Supp. 2d 309, 342 (E.D.N.Y. 2010), aff'd, 417 F. App'x 96 (2d Cir. 2011) (quoting *Bloom v. U.S. Gov't*, No. 02CIV.2352DABDF, 2003 WL 22327163, *8 (S.D.N.Y. Oct. 10, 2003)). Here, Plaintiffs' core RICO claims are based on fantastical allegations that dozens of

"federal and state judicial officers, prosecutors, attorneys, law enforcement officials, [child protective services agencies], school personnel, municipalities, and private actors" entered into an immense conspiracy, the objectives of which were to "enrich Enterprise members through fraudulent attorney appointments and misappropriated federal funds," obstruct justice, retaliate against Plaintiffs, and deprive Plaintiffs of their constitutional rights. ECF No. 1 ¶¶ 467, 469.

In addition to the RICO claims, each of the dozen or so remaining claims hinges on similarly incredible claims that the Defendants "weaponized their positions"; convened and enforced void proceedings; issued void orders; fabricated, manipulated, and backdated records; suppressed filings and material evidence; facilitated abductions; and misused the legal process. Plaintiffs' claims "are precisely the type of fanciful or delusional allegations that warrant dismissal . . . as factually frivolous." *Lang v. Clinton*, 761 F. Supp. 3d 595, 601–02 (W.D.N.Y. 2024), *appeal dismissed*, No. 25-126, 2025 WL 1982319 (2d Cir. May 21, 2025) (citing, *inter alia*, *Gladney v. Pendleton Corr. Facility*, 302 F.3d 773, 774 (7th Cir. 2002)); *see also Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) ("Gallop or any other plaintiff certainly may allege that the most senior members of the United States government conspired to commit acts of terrorism against the United States, [but] the courts have no obligation to entertain pure speculation and conjecture.").

## II. Frivolous Legal Claims

Besides being fantastical, Plaintiffs' allegations are also insufficient to state a legal claim. The complaint not only invites the Court to look past the well-settled

principles of the Rooker-Feldman doctrine, Younger absention, and immunity of public officials, but it also fails to adequately plead any of the 14 causes of action alleged.

### A. The Rooker-Feldman Doctrine and Younger Abstention

As the courts dealing with Plaintiffs' prior cases have noted, and this Court has echoed in its order denying Plaintiffs injunctive relief, the Rooker-Feldman doctrine and the principles of Younger abstention present potentially profound problems for Plaintiffs' complaint. The Court notes them here, though finds these considerations are not dispositive due to the vague and conclusory nature of Plaintiffs' allegations regarding the state court orders underlying its claims.

The Rooker-Feldman doctrine bars federal district courts from hearing cases that are, in effect, appeals from state court judgments on the grounds that the Supreme Court is the only federal court with jurisdiction over such cases. *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021) (citing 28 U.S.C. § 1257). In the two cases from which the doctrine took its name, the Supreme Court held that federal district courts could not exercise jurisdiction over claims seeking to void the outcome of a state court judgment. *Id.* (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 463 (1983) (plaintiffs sought reversal of state court's denial of requests for waivers of bar admission rule); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 444 (1923) (plaintiff sought to have Indiana judgment "declared null and void")). Following the more recent case of *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), the Second Circuit articulated four requirements that must be

met for Rooker-Feldman to apply:

> (1) "the federal-court plaintiff must have lost in state court[;]" (2) "the plaintiff must complain of injuries caused by a state-court judgment[;]" (3) "the plaintiff must invite district court review and rejection of that judgment[;]" and (4) "the state-court judgment must have been rendered before the district court proceedings commenced."

*Dorce*, 2 F.4th at 101 (quoting *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)). Where these four elements are satisfied, "[t]he Rooker-Feldman doctrine precludes district court review as a matter of subject matter jurisdiction." *Fraccola v. Grow*, 670 F. App'x 34, 35 (2d Cir. 2016).

Whereas the Rooker-Feldman doctrine applies to complaints from a "state court loser," the Younger abstention doctrine and its progeny require federal courts to refrain from exercising jurisdiction over matters concerning ongoing proceedings in state court. *See Younger v. Harris*, 401 U.S. 37, 44 (1971). "Younger abstention is mandatory when: (1) there is an ongoing state proceeding; (2) an important state interest is involved; and (3) the plaintiff has an adequate opportunity for judicial review of his constitutional claims during or after the proceeding." *Sobel v. Prudenti*, 25 F. Supp. 3d 340, 354–55 (E.D.N.Y. 2014) (citing *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 75 (2d Cir. 2003)). The Second Circuit has identified two narrow exceptions the Supreme Court has made to Younger abstention: (1) bad faith, i.e., "cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction"; and (2) extraordinary circumstances, i.e., where "extraordinary circumstances render the state court incapable of fairly and fully adjudicating the federal issues before it, . . . creating an

extraordinarily pressing need for immediate federal equitable relief." *Wilson v. Emond*, 373 F. App'x 98, 100 (2d Cir. 2010) (internal citations and quotation marks omitted).

In the instant case, the allegations in the complaint are so vague and conclusory that the Court is unable to determine with precision whether the Rooker-Feldman doctrine or Younger abstention apply. However, the Court observes – without finding – that one or both of the doctrines likely apply to bar subject matter jurisdiction over many of Plaintiffs' claims. For instance, Plaintiffs allege that "multiple judges knowingly issued custody orders after jurisdiction had been divested or never existed – Family Court judges altering custody determinations reserved exclusively to [the New York State] Supreme Court under DRL § 240, [New York State] Supreme Court judges presiding over matrimonial cases that were void ab initio, and federal judges insulating those rulings." ECF No. 1 at ¶ 157. Similarly, Plaintiffs allege Family Court Judge Jeffrey Wait of Saratoga County "weaponized" his "September 4, 2025 Criminal Court order . . . right after he signed TPO's in family court . . . . All orders are void ab initio." *Id.* ¶ 207. Plaintiffs also challenge rulings from the Third Department of the Appellate Division of the New York Supreme Court on "no fewer than ten emergency motions" (*Id.* ¶ 225), multiple actions from New York State Administrative Judges (*Id.* ¶ 234–241), and an order of dismissal from New York Court of Claims Judge Zainab Chaudhry (*Id.* ¶ 247–253).

Given the nature of the allegations in this case, it is nearly certain that multiple of these orders or rulings have rendered Plaintiffs the "state court loser,"

and therefore are sufficient to invoke the Rooker-Feldman doctrine to bar this court's consideration of Plaintiffs' challenges to them. *See, e.g., Bobrowsky v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 705 (S.D.N.Y. 2011) (discussing when an order is sufficiently final to render the plaintiff a "state court loser"). And it is also nearly certain that the court is required to abstain from considering challenges to other rulings or orders based on the Younger abstention doctrine. *See Falco v. Justs. of the Matrimonial Parts of Supreme Ct. of Suffolk Cnty.*, 805 F.3d 425, 427 (2d Cir. 2015) (finding Younger abstention to be warranted where "Falco's federal lawsuit implicates the way that New York courts manage their own divorce and custody proceedings—a subject in which 'the states have an especially strong interest.'"). Nevertheless, the substance and procedural posture of the case for each of the particular rulings that Plaintiff challenges are ambiguous at this point, and require the Court to refrain from a definitive ruling as to the application of either doctrine.

### B. Immunity

Even aside from the potentially profound problems for Plaintiffs' complaint raised by the Rooker-Feldman doctrine and Younger abstention, Plaintiffs' claims against multiple defendants are likely also barred by principles of immunity. Decisions by the Supreme Court "consistently have held that government officials are entitled to some form of immunity from suits for damages. As recognized at common law, public officers require this protection to shield them from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). As with the Rooker-Feldman doctrine and

Younger abstention, though, the Court finds these considerations are not dispositive due to the vague and conclusory nature of Plaintiffs' allegations.

### Judicial Immunity

As indicated above, several Defendants in the instant case are judges, either federal or state. Nevertheless, Plaintiffs maintain that these judicial defendants are not entitled to judicial immunity because they acted without jurisdiction. *See, e.g.,* ECF No. 1 ¶ 3–34.

The principle that judges generally have absolute immunity for suits for money damages for their judicial actions is well-settled. *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009). In addition to applying to judges, "[a]bsolute judicial immunity also extends to those who, at the direction of a judicial officer, perform administrative functions closely associated with the judicial process." *Dieujuste v. Sin*, 125 F.4th 397, 399 (2d Cir. 2025). This includes not only clerks, but also law guardians or attorneys for children who serve as an arm of the court. *See Yapi v. Kondratyeva,* 340 F. App'x 683, 685 (2d Cir. 2009); *Scotto v. Almenas*, 143 F.3d 105, 111 (2d Cir. 1998). However, judicial immunity does not apply either when a judge takes action outside of the judge's judicial capacity, or when the judge takes action that – although judicial in nature – is "in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 12 (1991).

Here, Plaintiffs allege that judicial immunity does not apply because the judge was either unlawfully appointed (ECF No. 1 ¶ 116), or acting in the clear absence of all jurisdiction (*Id.* ¶¶ 157–58). They further argue that "the conduct alleged –

fabricating and backdating orders, manufacturing attorney assignments, manipulating dockets, coordinating with clerks and attorneys, and weaponizing law enforcement – are not protected judicial functions but administrative, conspiratorial, and retaliatory acts undertaken to advance a racketeering enterprise." *Id.* ¶ 158. While Plaintiffs support this position with pages and pages of assertions, such assertions are vague and conclusory, and insufficient to divest the judge and clerk defendants of their judicial immunity. *See Butcher v. Wendt*, 975 F.3d 236, 241 (2d Cir. 2020).

*Other Forms of Immunity*

In addition to alleging wrongdoing by judges and their staffs, Plaintiffs also allege wrongdoing by multiple lawyer defendants, caseworkers and law enforcement officials. In that regard, the Second Circuit's discussion in *Cornejo v. Bell*, 592 F.3d 121 (2d Cir. 2010) is instructive:

> [There is] well-established precedent that "qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *DiBlasio v. Novello*, 344 F.3d 292, 296 (2d Cir. 2003) (quoting *Burns v. Reed*, 500 U.S. 478, 486–87 (1991)) (internal quotation mark omitted). However, there are certain instances where executive employees, such as prosecutors, are entitled to absolute immunity. *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976). The real distinction between whether an executive employee is entitled to absolute or qualified immunity turns on the kind of function the employee is fulfilling in performing the acts complained of. This is what the Supreme Court has called a "functional" analysis. *Briscoe v. LaHue*, 460 U.S. 325, 342. Prosecutors are entitled to absolute immunity, for example, because their prosecutorial activities are "intimately associated with the judicial phase of the criminal process, and thus [are] functions to which the reasons for absolute immunity apply with full force." *Imbler*, 424 U.S. at 430.
>
> *Mutatis mutandis*, absolute immunity also extends to non-prosecutor

officials when they are performing "functions analogous to those of a prosecutor." *Butz v. Economou*, 438 U.S. 478 (1978). While any analogy between two kinds of executive employees is never perfect, such reasoning by analogy is at the heart of judicial thinking: things that are essentially alike should be treated essentially the same. Thus, the *Butz* Court held that an agency official who decides to institute an administrative proceeding is entitled in such circumstances to absolute immunity, since that decision is "very much like the prosecutor's decision to initiate or move forward with a criminal prosecution." *Id.* at 515.

This Court has previously extended absolute immunity to state and federal officials initiating noncriminal proceedings such as administrative proceedings and civil litigation. *See Barrett v. United States*, 798 F.2d 565, 572 (2d Cir.1986) (citing *Butz*, 438 U.S. at 512–17). Of particular relevance here, we have held that an attorney for a county Department of Social Services who "initiates and prosecutes child protective orders and represents the interests of the Department and the County in Family Court" is entitled to absolute immunity. *Walden v. Wishengrad*, 745 F.2d 149, 152 (2d Cir. 1984). The Wishengrad Court concluded that given "the importance of the Department's [child protection] activities, the need to pursue protective child litigation vigorously and the potential for subsequent colorable claims," the attorney must be accorded absolute immunity from § 1983 claims arising out of the performance of her duties. *Id.* We conclude that the lawyer defendants in the instant case were fulfilling similar functions, and that the district court thus properly extended to those defendants absolute immunity from the § 1983 claims

. . . .

Even qualified immunity, however, is sufficient to shield executive employees from civil liability under § 1983 if either "(1) their conduct 'did not violate clearly established rights of which a reasonable person would have known,' or (2) 'it was objectively reasonable to believe that [their] acts did not violate these clearly established rights.'" *Young v. County of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998) (quoting *Soares v. Connecticut*, 8 F.3d 917, 920 (2d Cir. 1993) (alteration in original) (internal quotation marks omitted)); *see also Harlow*, 457 U.S. at 818. Of relevance here, we have previously noted that the second *Young* prong provides "substantial protection for caseworkers," *Tenenbaum v. Williams*, 193 F.3d 581, 596 (2d Cir.1999), which is necessary because "[p]rotective services caseworkers [must] choose between difficult alternatives," *id.* (second alteration in original) (quoting *van Emrik v.*

> *Chemung County Dep't of Soc. Servs.*, 911 F.2d 863, 866 (2d Cir.1990)).
> The *Tenenbaum* Court concluded that summary judgment should thus
> be "readily available to these caseworkers in proper cases under the
> qualified immunity doctrine." *Id.* at 597.

*Cornejo*, 592 F.3d at 127–28.

While *Cornejo* discussed attorneys originating the actions against plaintiff, as well as caseworkers working on the case, the principles set forth in *Cornejo* regarding qualified immunity also extend to law enforcement officials. *See McEvoy v. Spencer*, 124 F.3d 92, 97 (2d Cir.1997) (finding that qualified immunity shields government officials, including law enforcement officers, "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").

As with the judicial defendants discussed above, Plaintiffs allege that principles of immunity do not apply because of the nefarious motives underlying their actions. *See, e.g.,* ECF No. 1 ¶ 284 (regarding the law enforcement defendants, "[q]ualified immunity provides no protection for knowingly violating clearly established rights . . . ."). Nevertheless, the Court finds Plaintiffs' vague and conclusory assertions unpersuasive and insufficient to strip any of the public official defendants of immunity for which they may be eligible.

## C. Pleading Standards, Generally

Furthermore, Rule 8(a) of the Federal Rules of Civil Procedure requires a complaint to contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." "The statement should be plain because the principal function of pleadings under the Federal Rules is to give the adverse

16

party fair notice of the claim asserted so as to enable him to answer and prepare for trial.'" *Lang*, 761 F. Supp. 3d at 600 (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). "The statement should be short because '[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to ferret out the relevant material from a mass of verbiage.'" *Id.* (citation omitted). "When a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant or immaterial . . . or to dismiss the complaint." *Id.*

The instant complaint, running to 545 paragraphs over 98 pages, "is neither short nor plain, but rather is bloated, rambling, and teeming with irrelevant factual digressions and improper legal argument." *Lang*, 761 F. Supp. 3d at 601. Dismissal could be warranted on those grounds alone. *See, e.g.*, *Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972) (affirming dismissal of 88-page pro se complaint containing "a labyrinthian prolixity of unrelated and vituperative charges that defied comprehension [and therefore] failed to comply with the [short-and-plain-statement] requirement of Rule 8").

### D. Plaintiffs' Causes of Action

More to the point, dismissal is also warranted because the Court finds that each of the 14 causes of action in Plaintiffs' complaint fails to state a plausible claim for relief.

"[A] complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Where a plaintiff's factual allegations are "merely consistent with" a defendant's liability, those allegations "'stop[] short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, a pleading will not suffice where it offers only "labels and conclusions," "a formulaic recitation of the elements of a cause of action, or tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 555). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### *Counts I and II: RICO Claims*

Under 18 U.S.C. § 1962(c), it is unlawful for any person employed by or associated with any enterprise engaged in or affecting interstate or foreign commerce, "to conduct or participate, directly or indirectly, in the conduct of such enterprises affairs through a pattern of racketeering activity . . . ." Section 1961(d) further makes it unlawful for any person to conspire to violate § 1961(c). Plaintiffs allege that each individual defendant is liable under § 1962(c) for their own racketeering activity, and under § 1962(d) for conspiring together in a racketeering enterprise. ECF No. 1 ¶¶ 467–82.

As it relates to a pattern of racketeering under 18 U.S.C. § 1962(c), the Court notes that the "pattern of racketeering activity" elements "are adequately pled where plaintiff makes factual allegations sufficient to demonstrate that defendants committed two or more predicate acts as part of a pattern of racketeering activity." *De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 299 (S.D.N.Y. 2013). Further, fraud claims must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), a complaint must "allege facts that give rise to a strong inference of fraudulent intent." *Berman v. Morgan Keegan & Co.*, 455 F. App'x 92, 95 (2d Cir. 2012) (summary order) (quoting *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995)).

Yet the scheme here urged by Plaintiffs is literally incredible; the notion that so many public officials and agencies across the state would work with other private entities and individuals to perpetuate a scheme of illegal attorney appointments and document manipulation to generate attorney fees that would fund their enterprise and retaliate against Plaintiffs defies belief. Moreover, with respect to the substance of Plaintiffs' claims, the Court notes that "conclusory, vague, and general allegations of a criminal conspiracy do not . . . suffice to establish that the defendants participated in a 'pattern of racketeering activity' as prohibited by RICO." *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999). Because Plaintiffs' allegations are vague and conclusory, and fail to give rise to a strong inference of fraudulent intent on the part of any Defendant, the Court finds that Plaintiffs have failed to adequately plead their RICO claims.

*Counts III, IV, and V: 42 U.S.C. §§ 1983, 1985, 1986*

Plaintiff alleges that all Defendants in this action, with the exception of the Federal Judicial Defendants, "jointly and severally deprived Plaintiffs of rights secured by the Constitution and laws of the United States," including rights under the First Amendment, Fourth Amendment, and Fourteenth Amendment. ECF No. 1 ¶ 483. They also allege that all Defendants conspired to interfere with their civil rights to federal access and equal protection in violation of 42 U.S.C. § 1985(2)–(3) (*Id.* ¶ 488), and that certain "Supervisory Defendants" violated 42 U.S.C. § 1986 when they neglected to prevent the conspiracy (*Id.* ¶ 494).

To establish a prima facie case under 42 U.S.C. § 1983, a plaintiff must assert that "a person" acting under color of state law deprived him of his "rights, privileges, or immunities secured by the Constitution or laws of the United States." *Bigwarfe v. Bresnahan*, No. 818CV578GTSDJS, 2018 WL 6174188, at *3 (N.D.N.Y. June 5, 2018), *report and recommendation adopted*, No. 818CV0578GTSDJS, 2018 WL 5077196 (N.D.N.Y. Oct. 18, 2018). "The essential allegations of a § 1985(2) claim of witness intimidation are (1) a conspiracy between two or more persons, (2) to deter a witness by force, intimidation or threat from attending [federal] court or testifying freely in any pending matter, which (3) results in injury to the plaintiff." *Chahal v. Paine Webber Inc.*, 725 F.2d 20, 23 (2d Cir. 1984); *see also Haddle v. Garrison*, 525 U.S. 121, 125 (1998). To establish a violation of § 1985(3), the plaintiff must allege four elements: (1) a conspiracy motivated by racial animus; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal

protection of the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in her person or property or deprived of any right or privilege of a citizen of the United States. *United Broth. of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828–29 (1983); *Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000).

To begin with, the factual allegations giving rise to Plaintiffs' § 1983 and § 1985 claims do not rise to the level of the plausible. Moreover, the Second Circuit has long held that, with respect to conspiracy claims under 42 U.S.C. §§ 1983 and 1985, "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002); *Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993). Here, though Plaintiffs have alleged widespread fraud and other misconduct, they have offered little factual detail regarding the substance of any specific act and virtually no information, beyond their own conclusory assertions, as to when and how the various defendants at multiple levels of government spread across much of the state planned, communicated, cooperated, or conspired to deprive them of their First, Fourth, or Fourteenth Amendment rights or the equal protection of the laws, or to intimidate them to prevent their appearance in federal court. Accordingly, Plaintiffs' allegations that Defendants are liable under 42 U.S.C. §§ 1983 and 1985 are insufficient.

Finally, "Section 1986 does not provide substantive rights." *Meyer v. Haines*, No. 1:24-CV-00791 (AJB/DJS), 2025 WL 1651154, at *19 (N.D.N.Y. June 11, 2025). Rather, a claim under § 1986 for neglect to prevent a conspiracy to interfere with civil rights is contingent upon a plaintiff having a valid conspiracy claim under 42 U.S.C. § 1985. *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993). As Plaintiffs' have not adequately pled a claim under § 1985, their claim that Defendants violated § 1986 must fail.

### Counts VI, VII, and VIII: the ADA and the Rehabilitation Act

Plaintiffs allege that several public entity defendants are liable for discrimination against them under Title II of the ADA (ECF No. 1 ¶¶ 504–508), all defendants are liable for retaliation under the ADA (*Id.* ¶¶ 509–13), and several federally-funded defendants are guilty of retaliation under the Rehabilitation Act (*Id.* ¶¶ 514–18).

Title II of the ADA provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a discrimination claim under these provisions, a plaintiff must allege "(1) that he is a 'qualified individual' with a disability; (2) that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability." *Phelan v. Thomas*, 439 F. App'x 48, 50 (2d Cir. 2011) (citing *Hargrave*

*v. Vermont*, 340 F.3d 27, 34-35 (2d Cir. 2003)).

Retaliation against any individual who has asserted rights under the ADA is prohibited by Title V of that Act. *See, e.g., Currytto v. Doe*, 18-CV-1392, 2019 WL 2062432, at \*8 (D. Conn. May 9, 2019) (citing *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999)). "To state a retaliation claim under [the ADA], a plaintiff must establish that '(i) plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action.'" *Currytto*, 2019 WL 2062432, at \*8 (quoting *Weixel v. Bd. of Educ.*, 287 F.3d 139, 148 (2d Cir. 2002)). The same elements must be demonstrated for retaliation claims under the Rehabilitation Act. *See, e.g, Frantti v. New York*, 414 F. Supp. 3d 257, 290 (N.D.N.Y. 2019), aff'd, 850 F. App'x 17 (2d Cir. 2021) (combining the analysis of retaliation claims under the two statutes).

Among other things, the complaint in the instant case fails to plausibly allege that Plaintiffs were excluded from participation or otherwise discriminated against in any proceeding on the basis of their respective disabilities (ECF No. 1 ¶¶ 504–508), or that any adverse decision or course of action taken by the defendants was causally connected to their complaints under the ADA (*Id.* ¶¶ 509–518). Their allegations regarding animus are no more than naked assertions devoid of factual enhancement. For example, Plaintiffs state that "temporal proximity between Plaintiffs' ADA activity and Defendants' retaliatory conduct demonstrates causation" (*Id.* ¶ 511), but

Plaintiffs' allegations in this regard are so vague and conclusory as to negate their value as circumstantial evidence of retaliation.

### Counts IX–XIV: State Law Torts

Plaintiffs allege that various defendants are liable for multiple state law torts, including intentional infliction of emotional distress ("IIED"), fraud, conversion, abuse of process, negligence per se, and defamation. ECF No. 1 ¶¶ 519–45. None of these causes of action are adequately pled or supported by plausible allegations.

At the outset, the Court notes that Plaintiffs' cause of action for each of these torts fails to specify a complete set of factual allegations that would satisfy the elements of the claim, leaving the Court to sift through an array of allegations and attempting to match them to the elements. "It is not the duty of the defendants or this Court to sift through the Complaint and guess which factual allegations support which claims." *Discon Inc. v. NYNEX Corp.*, No. 90-CV-546A, 1992 WL 193683, at *16 (W.D.N.Y. June 23, 1992).

Further, in order to establish liability for IIED, a plaintiff must prove that the defendants exhibited "(1) extreme and outrageous conduct" with the "(2) intent to cause severe emotional distress," that there was "(3) a causal connection between the conduct and the injury," and that "(4) severe emotional distress" resulted. *Rentas v. Ruffin*, 816 F.3d 214, 227 (2d Cir. 2016) (quoting *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir.1996). To be sure, the conduct that Plaintiff alleges throughout the complaint is, in many instances, extreme and outrageous. However, as discussed at length above, their allegations are conclusory, speculative, and simply not plausible.

Under New York law, the elements of a civil fraud claim are that "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *JBCHoldings NY, LLC v. Pakter*, 2013 WL 1149061, at *13 (S.D.N.Y. 2013) (quoting *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415–16 (2d Cir. 2006)). A claim for common law fraud under New York law must satisfy the requirements of the heightened pleading standard under Rule 9(b) of the Federal Rules of Civil Procedure. *JBCHoldings NY, LLC*, 2013 WL at * 13 (citing *Landesbank Baden–Wurttemberg v. Goldman, Sachs & Co.*, 478 F. App'x 679, 681 (2d Cir. 2012)). As noted with regard to Plaintiff's RICO claim, when alleging fraud Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Yet "[t]he Second Circuit has clarified that although intent may be alleged generally, 'we must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations." *Waldron v. Milana*, No. 5:10-CV-0065 GTS/DEP, 2013 WL 2445047, at *3 (N.D.N.Y. June 5, 2013) (citations omitted). But that is precisely what the claims appear to be based on in the instant case, speculation and conclusory allegations.

New York law defines conversion as "the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of

the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403–04 (2d Cir. 2006) (quoting *Vigilant Ins. Co. of Am. v. Hous. Auth.*, 660 N.E.2d 1121, 1126 (1995)). To sufficiently plead a claim of conversion, a plaintiff must allege: "(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the [property], to the alteration of its condition or to the exclusion of the plaintiff's rights." *Ultra Dairy LLC v. Kondrat*, 514 F. Supp. 3d 452, 459 (N.D.N.Y. 2021) (citation omitted). Here, Plaintiffs have failed to sufficiently plead at least the second element, ownership and control over the property which they allege to have been converted.

A valid abuse of process claim under New York law is comprised of three elements: "(1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective." *AF Gloenco Inc. v. Ushers Mach. & Tool Co.*, No. 1:10-CV-1128 GLS/RFT, 2011 WL 4593741, at *3 (N.D.N.Y. Sept. 30, 2011) (quoting *Curiano v. Suozzi*, 63 469 N.E.2d 1324 (1984)). Plaintiffs' allegations in this complaint with respect to the second and third elements are speculative and conclusory, and therefore implausible.

Under New York law, if a plaintiff proves that a statutory violation has occurred, he need not prove the traditional negligence elements of foreseeability, duty and breach because it is considered negligence per se. *Deso v. CSX Transp., Inc.*, 790 F. Supp. 2d 1, 8 (N.D.N.Y. 2011) (quoting *Capriotti v. Consol. Rail Corp.*, 878 F. Supp.

429, 434 (N.D.N.Y. 1995)). However, the plaintiff must still show causation. *Id.* Plaintiffs' negligence per se claim fails here because they have made the conclusory assertion that any statutory violations occurred without any necessary elaboration to justify their claim. That is, Plaintiffs' merely point to various provisions of New York Social Services Law, New York Education Law, and New York Executive Law and assert that they were violated by defendants without any explanation as to what these statutes require or prohibit, or what constitutes a violation of those statutes.

Lastly, to state a claim for defamation under New York law, a plaintiff must allege "(1) a written [or spoken] defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Miller v. James*, 751 F. Supp. 3d 21, 35 (N.D.N.Y. 2024), *aff'd*, No. 24-2785, 2025 WL 1085815 (2d Cir. Apr. 9, 2025) (internal quotation marks and citation omitted). "In an action for libel or slander, the particular words complained of shall be set forth in the complaint[.]" *Williams v. Buffalo Pub. Sch.*, 758 F. App'x 59, 65 (2d Cir. 2018) (quoting N.Y. C.P.L.R. 3016(a)). In addition, the complaint must specify "the time, manner and persons to whom the publications were made." *Williams* , 758 F. App'x at 65 (quoting *Vardi v. Mut. Life Ins. Co. of N.Y.*, 136 A.D.2d 453, 455 (1st Dep't 1988)).

Here, in addition to implausible conclusory and speculative assertions unenhanced by further factual allegations, Plaintiffs' complaint fails to meet the level of specificity required of defamation claims under New York law. Plaintiffs broadly allege that defendants knowingly published false statements, but – with the

exception of judicial defendants labelling him a "narcissist" and "abuser" – fail to identify the particular words complained of. Moreover, Plaintiffs fail to specify the time, manner and persons to whom the publications of any defamatory statements were made.

## III. Opportunity to Amend

For all of the foregoing reasons, the Court finds that Plaintiffs' complaint [ECF No. 1] must be dismissed as frivolous. Nevertheless, the Second Circuit has stated that failure to provide notice and an opportunity to be heard prior to dismissal is a "bad practice in numerous contexts" and "reversible error" in others. *Curcio v. Abrams*, No. 22-693, 2023 WL 31183, at *2 (2d Cir. Jan. 4, 2023). The usual practice is to allow leave to replead a deficient complaint, especially where a complaint has been submitted pro se. *See Davidson v. Flynn*, 32 F.3d 27, 31 (2d Cir. 1994). Therefore, Plaintiffs may file an amended complaint, setting forth the factual and legal bases for their claims, within 30 days of the date of this order. *See Carmel v. CSH & C*, 32 F. Supp. 3d 434, 435 (W.D.N.Y. 2014).

The Court recognizes there are numerous motions pending on the docket at present, including motions to vacate entries of default, motions for enlarged pages, and multiple motions by Plaintiffs. The Court will consider such motions in due course, should Plaintiffs timely file an amended complaint that addresses the multitude of deficiencies identified in this decision.

## CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Plaintiffs shall file an amended complaint within thirty (30) days after the date of filing of this Decision and Order. Plaintiffs are advised that an amended complaint is intended to completely replace the prior complaint in the action. *Arce v. Walker*, 139 F.3d 329, 332 n.4 (2d Cir. 1998) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.") (quoting *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)). In other words, Plaintiffs' amended complaint must be pled so as to stand alone as the sole complaint in this action that Defendants must answer. *Allen v. Erie Cnty. Med. Ctr. Corp.*, No. 25-CV-136 (JLS), 2025 WL 641299, at *4 (W.D.N.Y. Feb. 25, 2025); and it is further ordered

ORDERED that response deadline of January 2, 2026 set for all defendants at ECF No. 160 is hereby adjourned indefinitely. A new deadline shall be established, if appropriate, following the Court's review of Plaintiffs' amended complaint, if filed.

If plaintiff fails to file an amended complaint, or files a similarly frivolous amended complaint, this action will be dismissed with prejudice.

SO ORDERED.

Dated:     December ___9___, 2025
           Rochester, New York

ENTER:

HON. MEREDITH A. VACCA
United States District Judge